May Term,
1859.

BROKER
v.
THE CITY
OF NEW AL-
BANY.

---

### BROKER *v.* THE CITY OF NEW ALBANY.

*A.* made a contract with the authorities of the city of *New Albany*, to grade, pave, &c., part of one of the streets thereof, under the statute for the incorporation of cities, 1 R. S. p. 217; and *B.* became surety for the performance of the contract. *A.* received from *C.*, one of the property owners along the line of street to be graded, &c., in advance of estimates, the full amount for which he would have been liable upon the completion of the improvement, and died, leaving it still incomplete. *B.*, his surety, completed the work upon the contract, to save himself from liability thereon, and then brought suit against *C.*, in the name of the city, to recover the value of such work. *Held*, that he could not recover, because the payment to *A.* was, under the circumstances, a satisfaction of the demand.

APPEAL from the *Floyd* Circuit Court.

HANNA, J.—Under certain provisions of the statute for the incorporation of cities (1 R. S. p. 217), one *Armstrong* and the appellee entered into a contract by which said *Armstrong* agreed to grade, pave, &c., a part of a street for a price agreed upon. One *Saunders* became the surety of said *Armstrong* for the performance of the contract.

Before the completion of the contract, *Armstrong* died. *Saunders*, his surety, completed it.

By the statute referred to, the city authorities make contracts for such improvements upon the petition, &c., of the property holders along the line of the improvement; but it is enacted that "the owners of the lots bordering on such

May Term,
1859.

BROKER
v.
THE CITY
OF NEW AL-
BANY.

street or alley, or the part thereof to be improved, shall be liable to the contractor for their proportion of the cost, in proportion to the length of the line of the lots bordering thereon, and owned by them."

The 64th section of the act is as follows: "When any such contracts shall be made, and shall be in progress of fulfillment, the mayor and council shall have power to cause estimates to be made from time to time of the amount of work done by the contractor, and to require such amount to be paid to him, deducting a reasonable percentage to secure the completion of the contract, until the whole shall be finished, by the owners of the lots bordering on the street or alley, or the part thereof to be improved, in the proportion specified in the next preceding section."

The next following section gives power to the city authorities, at the request of the contractor, to bring suit in the name of the corporation, against any one who may refuse to pay his proportion, &c.

The case at bar was decided upon an agreed statement of facts, by which it appears, among other things, that "The whole amount which should have been assessed against the defendant for his proportion of the expense of said improvements upon the final completion of the work, according to the terms of the contract, is 226 dollars, 89 cents, which includes the work done by *Saunders* after *Armstrong's* death. This whole amount was paid by the defendant to *Armstrong*, during his lifetime, for estimates made, and in advance of estimates to be afterwards made. These payments were made at the solicitation and request of *Armstrong*, and to enable him the more advantageously to perform the work required by his said contract, and they were received and accepted by him as a full payment of all the defendant's portion of the expense of said improvements."

The Court found for the plaintiff 73 dollars, 50 cents, and gave judgment therefor.

It is insisted that this judgment is right, because all payments made by the defendant to the contractor, over the

May Term,
1859.

BROKER
v.
THE CITY
OF NEW AL-
BANY.

estimates from time to time made, were so made at his risk; and if, for any reason, the contractor should fail to complete his undertaking, the property holder would be liable for such sums as might be necessary to complete the work, in the same manner as if no payments had been made beyond the estimates.

When closely examined, it will be seen that the facts in the case at bar do not bring it within the general proposition thus advanced to sustain the judgment. It is not necessary, therefore, to examine or decide whether the defendant would, by the payments he thus made to *Armstrong*, have been discharged from all liability, for the completion of that improvement, if the work had, after the death of *Armstrong*, been completed by some other person under a new contract.

Here there is no pretense that a new contract was made; but it is expressly agreed that *Saunders* completed the contract of *Armstrong* to avoid liability as a surety for the failure of his principal.

Any payments made to *Armstrong* would have been good as against any suit brought by him, or for his use, in his lifetime, for the work, even if made in advance of estimates. Why not good as against a suit brought after his death, and after work done under the circumstances herein?

It is argued that *Saunders* had certain rights as surety, one of which was, the privilege of completing the work under the contract of *Armstrong*, to save himself harmless, at the same rates of compensation which his principal was to receive.

It is not necessary for us to decide whether *Saunders* had the right here contended for, to complete the work, on the same contract, &c. It is only necessary for us to determine whether, under the circumstances of this case, a payment to *Armstrong* was good against *Saunders*. We think it was. The statute makes the owner of property liable to the contractor. The whole amount for which the defendant was liable for that improvement, if completed according to the existing contract, was, upon the request

of the contractor, paid to him and received as a full payment.

But it is said that *Saunders* should be permitted to recover, and leave the defendant to recover from the heirs or estate of *Armstrong*, for the advanced payments made by him.

If the defendant had no right to make payments to *Armstrong* beyond the estimates made, then this position would be plausible; but if he had such right, then, we think that if either the surety or the defendant must suffer, in the first instance, it should be the surety, for the reason that, by the act of becoming the surety of *Armstrong*, he gave him credit, and placed him in a position which enabled him to thus legally receive the money to which he would have ultimately been entitled, if he had completed his contract.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*T. L. Smith*, for the appellant.

*J. S. Stotsenburg*, for the appellee.

